IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENISE KENDALL, Individually ) <br> and as Special Administrator ) <br> of the ESTATE OF LARRY ) <br> KENDALL, deceased, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DANIEL LIESEN, M.D., SCHEER ) <br> SURGICAL, S.C., EVERETT P. ) <br> KIRCH, M.D., and ILLINOIS ) <br> GASTROENTEROLOGY GROUP, LLC., ) <br> ) <br> Defendants. ) | No. 13 C 3529 <br><br> Magistrate Judge Arlander Keys |

## MEMORANDUM OPINION AND ORDER

On May 17, 2012, Larry Kendall went to the emergency room at Vista Medical Center in Waukegan, Illinois. The emergency room doctor, Dr. Zaman, diagnosed him with "acute cholecystitis" and recommended immediate surgery. Dr. Zaman discussed Mr. Kendall's case with the on-call surgeon, Dr. Daniel Liesen, and with the on-call gastroenterologist, Dr. Everett Kirch. According to the complaint, both agreed to treat Mr. Kendall, yet neither came to see him. Mr. Kendall was admitted to the hospital in the early morning hours of May 18, 2012, but his condition worsened, and, by 8:25 that night, he was dead. His wife sued, alleging two counts of negligence – one against Dr. Liesen and his employer, Scheer Surgical, and one against Dr. Kirch and his employer,

Illinois Gastroenterology Group ("IGG"). The case is before the Court on several discovery-related motions involving communications with non-defendant physicians.

The first motion before the Court is a motion filed by Dr. Kirch and IGG, seeking clarification and guidance regarding communications with IGG's president, Dr. Fred Rosenberg. Counsel for the defendants want to engage in *ex parte* communications with Dr. Rosenberg, who they contend is the managing member and President of IGG and the decision-maker with respect to the practice and this lawsuit. Counsel for the defendants argue that they should be able to communicate freely with Dr. Rosenberg concerning IGG's corporate liability, given that he is responsible for making decisions on behalf of the group as it pertains to this litigation.

But Dr. Rosenberg may also be considered a treater here; he treated Mr. Kendall in May of 2011 – one year before the events leading to this lawsuit. And, accordingly, the plaintiff contends that, under *Petrillo v. Syntex Laboratories*, 148 Ill. App. 3d 581, 499 N.E.2d 952 (Ill. App. Ct. 1986), counsel for the defendants are precluded from communicating *ex parte* with Dr. Rosenberg – including obtaining his signature on discovery responses and presenting him for deposition.

The second motion before the Court is a motion filed by Dr. Daniel Liesen and Scheer Surgical, seeking leave to engage in *ex*

*parte* communications with Dr. Michael Scheer and Dr. Amit Parikh. Dr. Scheer is president of Scheer Surgical; he treated Mr. Kendall in May of 2011. Dr. Parikh is an employee and agent of Scheer Surgical; he treated Mr. Kendall on May 18, 2012. Neither Dr. Scheer, nor Dr. Parikh has been named as a defendant. The parties' arguments with respect to these doctors are similar to those raised in the motion filed by IGG.

The third motion before the Court concerns the depositions of Dr. Scheer and Dr. Parikh, which counsel for the plaintiff has noticed for September 24th and September 25th respectively. The defendants have moved to quash the subpoenas; in the alternative, they seek a protective order precluding plaintiff's counsel from deposing Dr. Scheer concerning anything beyond his treatment of the plaintiff and precluding the plaintiff from deposing Dr. Parikh without allowing them to represent him.

All three motions require the Court to consider whether, and under what circumstances, defense counsel in a negligence/medical malpractice case can engage in *ex parte* communications with doctors who, at one time or another, treated the plaintiff. The Court's analysis, of course, begins with *Petrillo v. Syntex Laboratories*, 148 Ill. App. 3d 581, 499 N.E.2d 952 (Ill. App. Ct. 1986).

In *Petrillo*, the Illinois Appellate Court held that "the duties owed by a physician as a fiduciary are such that he should

3

not, in light of the loyalty and trust built into the relationship he has with his patient, engage in an *ex parte* conference with defense counsel"; rather, the court held, "discussions between defense counsel and a plaintiff's treating physician should be pursuant to the Rules of discovery only." *Petrillo*, 148 Ill. App. 3d at 595, 610, 499 N.E.2d at 962, 971.

In *Kirkland v. Siglove*, No. 11 C 7285, 2013 WL 707917 (N.D. Ill. Feb. 26, 2013), Judge Gilbert, like this Court, was asked to consider defense counsel's request for *ex parte* communications with doctors who worked for the defendant medical practice. The doctors with whom the defendants wanted to speak had treated the plaintiff, but they had not been named as defendants in the lawsuit; defense counsel sought permission to communicate with them outside the presence of the plaintiffs or their attorneys because they believed it would assist them in defending the medical practice against the plaintiffs' negligence claims. *Kirkland*, 2013 WL 707917, at *1. Judge Gilbert recognized that "Illinois courts have held that *ex parte* conversations between attorneys for a medical clinic sued in a medical malpractice lawsuit and a plaintiff's treating physicians not named as defendants in the lawsuit violate the *Petrillo* doctrine and invade the physician-patient privilege even though the other treating physicians are employed by the defendant medical clinic." *Id.,* 2013 WL 707917, at *2. Relying on *Petrillo* and

4

*Aylward v. Settecase*, 409 Ill. App.3d 831, 948 N.E.2d 769 (1st Dist. 2011), Judge Gilbert denied the request for *ex parte* communications.

Significantly, neither *Petrillo*, nor *Kirkland*, nor *Aylward* involved requests for *ex parte* communications with the doctors who were the decision-makers for the medical group sued. They all involved requests for *ex parte* communications with doctors who had treated the plaintiffs, but not been named as defendants in the lawsuit. As a result, these cases have limited application to the motions currently before the Court.

Indeed, the Court could not find a single case where *Petrillo* was applied to limit *ex parte* communications between a defendant medical practice and the attorneys hired to represent that practice. This makes sense. Given that Illinois law provides an exception to doctor-patient confidentiality when the patient sues the doctor for malpractice, *see* 735 ILCS 5/8-802, the Petrillo question may not even arise in such circumstances.

When a plaintiff sues his doctor alleging negligence in the course of treatment, he consents to certain limited disclosures of information that would otherwise be protected from disclosure by the doctor-patient privilege. *E.g., Kirkland*, 2013 WL 707917, at *2 (citing *Petrillo*, 499 N.E.2d at 959). *Petrillo* limits that consent, providing that it does not apply to treaters who are not named as defendants in the lawsuit. To some extent, *Petrillo* is

5

implicated in this case – certainly it is implicated with respect to Dr. Parikh, who is unquestionably a non-defendant treater. And the Court will consider the impact of *Petrillo* on the request for *ex parte* communications with Dr. Parikh below. But, more fundamentally, *Petrillo* does not change the fact that, once a plaintiff has sued a doctor, he necessarily waives some of the protections afforded him by the doctor-patient privilege. And this makes sense – absent a waiver of the privilege, the accused doctor would be severely hampered in his ability to defend himself. Here, Mr. Kendall – through his wife – sued Scheer Medical and IGG. Those are not people, they are corporate entities; but obviously corporations do not make decisions – people make decisions on behalf of those corporations. And so saying that presidents and decision makers for those corporations are bound by the doctor-patient privilege is akin to saying that a doctor who is sued is bound by the privilege. The law provides otherwise, for sound policy reasons. Based upon this, the Court finds that *Petrillo* does not preclude *ex parte* communications with the individuals who serve as the corporate heads/decision makers of the accused corporations.

With respect to Dr. Parikh, it seems clear that *Petrillo* would forbid *ex parte* communications. Dr. Parikh is a non-defendant physician who provided treatment at or around the time of the alleged negligence and counsel seeks to interview him *ex*

6

*parte* specifically to discuss Mr. Kendall's treatment. This one falls squarely within *Petrillo*'s prohibition.

Having said that, given the timing of the treatment, it is curious that plaintiff's counsel has not named Dr. Parikh as a defendant. As the Court understands the facts, Dr. Parikh's conduct is at issue in this case; the plaintiff has sued Dr. Liesen, based upon his actions – or inactions – on May 17 and 18; yet they have not sued Dr. Parikh, who similarly acted – or failed to act – on the 18th during the same hospitalization event. Dr. Parikh's treatment was not subsequent to the alleged negligence, it was contemporaneous with it.

Although plaintiff's counsel has indicated that he does not yet know whether he will name Dr. Parikh as a defendant, it would be grossly unfair to bar *ex parte* communications and preclude counsel from representing him at his deposition, until such time as plaintiff's counsel makes that decision. If counsel names Dr. Parikh, the privilege is waived and *Petrillo* does not apply. If counsel elects not to name Dr. Parikh, *Petrillo* applies and defense counsel will be precluded from presenting him for deposition or from engaging in *ex parte* communications. But at least then, they will know whether Dr. Parikh's conduct could potentially expose them to liability. Until counsel for the plaintiff makes that determination, the Court will neither

require him to sit for deposition, nor allow *ex parte* communications with counsel.

Plaintiff's counsel has 30 days from the date of this order to amend the complaint to name Dr. Parikh. If counsel elects to amend the complaint to add Dr. Parikh, counsel for Scheer Surgical may represent him, may engage in *ex parte* communications with him and may present him for deposition. If counsel does not amend the complaint, Dr. Parikh will be considered a non-defendant treater and *Petrillo*'s prohibition against *ex parte* communications will apply.

## Conclusion

For the reasons set forth above, the Court finds that the *Petrillo* doctrine does not bar *ex parte* communications with the decision-makers of the defendant medical groups. Accordingly, the Court grants IGG's motion for leave to engage in *ex parte* communications with Dr. Rosenberg [Docket #40]. Along the same lines, the Court grants in part and denies in part Scheer Surgical's motion for leave to engage in *ex parte* communications [Docket #43]; counsel for Scheer Surgical may engage in *ex parte* communications with Dr. Scheer, who they contend (and the plaintiff does not dispute) is the decision-maker with respect to the defendant practice. But counsel for Scheer Surgical may not engage in *ex parte* communications with Dr. Parikh unless and

until he is named as a defendant in this lawsuit. Plaintiff's counsel has 30 days from the date of this Memorandum Opinion and Order to amend the complaint to add Dr. Parikh as a defendant, if he intends to do so. The motion to quash [Docket #66] is granted as to the deposition of Dr. Parikh; the deposition of Dr. Parikh may proceed once the complaint is amended to add him as a defendant or once the 30-day amendment period has passed, whichever occurs first. Given the Court's finding above concerning counsel's ability to communicate *ex parte* with Dr. Scheer, the motion to quash the subpoena served on him is denied, though obviously counsel will have to pick a new date for his deposition.

Date: September 25, 2013

E N T E R E D:

_____
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT

9